UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EVELYN LUCAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17 CV 2312 DDN |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security finding that plaintiff Evelyn Lucas was not disabled and thus not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

### I. BACKGROUND

Plaintiff was born on December 15, 1958, and filed an application for DIB on March 26, 2014. (Tr. 141). She alleged a disability onset date of October 24, 2010, due to chronic cellulitis; lymphedema; right hand carpal tunnel; sleep apnea; obesity; weakness in fingers, arms, and legs; and chronic fatigue. (Tr. 171). Her date last insured for purposes of DIB was December 31, 2012. (Tr. 168). Plaintiff's application was denied at the initial administrative level, and she filed a request for a hearing. (Tr. 76-85, 91-95, 98-99). An evidentiary hearing was held on February 4, 2016, before an ALJ.

(Tr. 38-75). The ALJ issued a decision on May 31, 2016, finding no disability, because plaintiff could perform past relevant work ("PRW"). (Tr. 14-22). Plaintiff filed a request for review of the hearing decision with the Appeals Council, which was denied, thus exhausting all administrative remedies. (Tr. 1-8). The ALJ's decision stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record. Specifically, she argues that the ALJ improperly assessed plaintiff's symptoms. (Doc. 19 at 3). Additionally, plaintiff claims that the ALJ's findings regarding obesity are inconsistent and he improperly weighed the evidence. (*Id.* at 9-10). Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits or for further evaluation.

A. **Medical Record and Evidentiary Hearing**

The court adopts plaintiff's Statement of Material Facts (Doc. 19, Ex. 1) as clarified by defendant's response (Doc. 26, Ex. 1) in addition to defendant's Statement of Additional Facts (Doc. 26, Ex. 2) as admitted in plaintiff's response (Doc. 19, Ex. 1). Together, these facts represent a fair and accurate summary of the medical record and testimony as given at the evidentiary hearing. The court will discuss relevant facts as necessary to address the parties' arguments.

B. **ALJ's Decision**

On May 31, 2016, the ALJ issued a decision that plaintiff was not disabled under the Social Security Act. He found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 24, 2010, through the date last insured of December 31, 2012. (Tr. 16). He found plaintiff had the severe impairments of obesity, lymphedema, and coronary artery disease. (Tr. 16). The ALJ found that none of these impairments, individually or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). After reviewing the

evidence, the ALJ found that through plaintiff's date last insured, she had the residual functional capacity ("RFC") to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) except: never climbing ropes, ladders, scaffolds; no more than occasionally climbing ramps and stairs; no more than occasionally bending, stooping, kneeling, crouching or crawling; and never working at unprotected heights or around hazardous machinery.

(Tr. 17). In making this determination, the ALJ considered plaintiff's medical records, treatment history, and various medical opinions, noting the limitations and restrictions physicians reported about plaintiff's abilities. (Tr. 17-21). In addition, he analyzed her reported symptoms, considering her subjective history of complaints in conjunction with the medical evidence. The ALJ found no persuasive evidence that plaintiff's impairments resulted in "severe symptoms and limitations of function, for twelve consecutive months in duration, despite compliance with treatment." (Tr. 21).

Continuing the analysis, the ALJ concluded plaintiff was capable of performing past relevant work as a global systems network manager. (Tr. 21). This was based on plaintiff's own description of the functional requirements of this job and the ALJ's comparison of plaintiff's RFC with the physical and mental demands of this work. (Tr. 21-22). Accordingly, the ALJ concluded that plaintiff was not disabled and had not been under a disability from October 24, 2010, the alleged onset date, to December 31, 2012, the date last insured. (Tr. 22).

## II.  DISCUSSION
### A.  Standard of Review and Legal Framework

To qualify for disability benefits, the plaintiff must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has created a five-step sequential evaluation process to determine an individual's disability status. If a finding of disability or no disability can be found at any step, the analysis is finished and does not proceed to the next step. 20 C.F.R. §404.1520. At Step One, the claimant must prove she is not engaged in substantial gainful activity as defined by work activity done for pay or profit involving significant physical or mental activities. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1527(a)-(b). At Step Two, the claimant must show she suffers from an impairment or a combination of impairments that is severe and meets the twelve month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. At Step Three, the claimant may prove her impairment meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(ii). Establishing a listed impairment will prove disability, but a failure to do so does not defeat the claim. Between the third and fourth steps, the ALJ determines the RFC, which represents the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545; SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). The RFC should be based upon all relevant medical evidence in the record. 20 C.F.R § 404.1520(e). At the fourth Step, the claimant must prove she cannot do her past relevant work. 20 C.F.R § 404.1520(f). At the fifth Step, the ALJ determines whether the claimant can perform other work. The claimant must continue to prove disability, but the Social Security Administration has the burden of providing evidence of jobs existing in significant numbers in the national economy that the plaintiff can perform considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(2). If the claimant can perform other work, the ALJ will find no disability.

In reviewing a denial of Social Security disability benefits, the Court "must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is "less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).

To determine whether there is substantial evidence, the Court must consider evidence that both supports and detracts from the ALJ's conclusion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). However, the Court may not reverse the ALJ's final decision as long as that decision falls within the "available zone of choice." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision is not outside the zone of choice solely because the Court may have reached a different conclusion had it been the finder of fact. *Id.* Additionally, substantial evidence may exist to support two inconsistent decisions. As long as one of those positions represents the Commissioner's decision, the Court must affirm. *See, e.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996).

**B.** **The ALJ properly assessed plaintiff's subjective complaints**

Plaintiff first argues that the ALJ mischaracterized evidence and failed to discuss the *Polaski* factors when evaluating plaintiff's testimony regarding her symptoms. (Doc. 19) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Plaintiff argues that an ALJ's decision "must make an express credibility determination, detailing the reasons for discrediting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." (Doc. 19 at 4) (citing *Polaski v. Heckler*, 739 F.2d at 1322).[1] However, this interpretation of *Polaski* is not reflected in the Social Security Administration's authoritative statutes, regulations, or policy rulings.

Under Social Security Ruling 16-3p, when assessing a claimant's subjective complaints, an ALJ's decision need only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Recent Eighth Circuit case law holds that the ALJ is not in fact required to discuss each *Polaski* factor, as long

---

[1] As of the date of the ALJ's opinion, the term "credibility" was rejected in favor of "subjective symptoms," because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

- 5 -

as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2018) (citations omitted). Rather than a mandatory list, the *Polaski* factors are suggested sources of information for the adjudicator to consult in evaluating the claimant. ALJs may not accept or reject subjective complaints "*solely* on the basis of personal observations" – there must be something more, which may simply be "inconsistencies in the evidence as a whole" – but ALJs are also not required to explicitly discuss the factors. *Polaski*, 739 F.2d at 1322.

Plaintiff testified that her pain and swelling limit her ability to perform past work, because she must elevate her legs and cannot sit, stand, or walk for any significant length of time. (Tr. 73). She complained that her lymphedema required her to have her legs elevated 6 hours throughout the day and once she stands up, her legs begin to swell. (Tr. 49-52). On October 28, 2010, she was diagnosed with a left leg abscess with cellulitis, requiring two surgeries, twenty days of hospitalization, and home health care through January 4, 2011. (Tr. 815-973, 1212-1355). At the time of the hearing in 2016, plaintiff testified she continued to use lymphedema wraps, massages, compression hose, and leg elevation to minimize swelling. (Tr. 55-56). She testified it was painful to sit with her feet elevated, but that she had her feet elevated 70 percent of daylight hours. (Tr. 56). She testified she must hold on to something when taking the stairs and can walk about half a block before getting pain in her ankles, feet, or legs. (Tr. 61).

The ALJ found plaintiff's testimony about her subjective symptoms to be inconsistent with other evidence in the record. He noted that no physicians recommended she not seek employment and that she testified she stopped working because she was laid off, not because of her medical conditions. (Tr. 20). The ALJ noted that plaintiff's abscess and cellulitis have been effectively treated and noted medical records showing extremities without edema or loss of sensation. (Tr. 20). The ALJ also noted that nothing in the medical evidence supported plaintiff's allegation that she is required to elevate her legs seventy percent of the time, and her report of her job requirements was consistent with her abilities. (Tr. 20). Under *Polaski* and SSR 16-3p, if these reasons are

supported by the record, they are a sufficient basis for the ALJ to reject the alleged severity of plaintiff's complaints. But plaintiff argues that these reasons are not, in fact, supported by the record. The Court will address each reason in turn.

First, no physician recommended that plaintiff refrain from seeking employment. Plaintiff admits that while this may be true, two physician opinions state limitations that would prevent her from performing her past relevant work: Dr. Reed opined that plaintiff needs to elevate her legs above her heart with prolonged sitting (Tr. 798-801), and Dr. Hayes opined that plaintiff needs to have her legs elevated to ninety degrees for seventy-five percent of an eight-hour day. (Tr. 1058-59). However, these opinions were issued over three years after plaintiff's date last insured of December 31, 2012. Dr. Hayes started seeing plaintiff in 2015, and her opinion was issued on January 29, 2016, stating the earliest date these limitations applied was January 29, 2016, over three years after the date plaintiff was last insured for DIB purposes. The ALJ gave Dr. Hayes' opinion little weight. The ALJ did not address Dr. Reed's opinion, but it too was issued in January 2016. (Tr. 42-43, 168, 209, 801-02).

Any alleged deficiencies in the ALJ's opinion for not adequately addressing these two opinions are harmless: the opinions were issued three years after plaintiff's date last insured. To be entitled to disability insurance benefits, a plaintiff must show entitlement – that is, disabling impairments – during the period insured. An ALJ "need not consider medical records created after the date last insured unless they relate to [the claimant's] condition before the date last insured." *Bannister v. Astrue*, 730 F. Supp. 2d 946, 953 (S.D. Iowa 2010); *see also Whitman v. Colvin*, 762 F.3d 701, 709 (8th Cir. 2014) (holding that medical opinions post-dating the plaintiff's date last insured that did not state whether the opinions would apply before the date last insured were not "probative of the claimant's condition for the time period for which benefits were denied" and did not support remand). Dr. Hayes started treating plaintiff in 2015, two years after plaintiff's date last insured, so her opinion cannot relate to plaintiff's condition during the relevant time period. (Tr. 1057-61). Dr. Reed treated plaintiff during the relevant period, but her 2016 opinion does not indicate either directly or impliedly that the opinion applied at the

time of the relevant period. (Tr. 798-802). The medical opinions, therefore, have no practical effect on the outcome of the case. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case.")

Second, plaintiff testified she stopped working because she was laid off. She subsequently applied to several other companies but was not successful. (Tr. 49-51). Often, when circumstances indicate that an employee stopped working because she was laid off and not as a result of her condition, this "allows the inference that the claimant was able to work, and [was] therefore not disabled, at the time of her alleged onset disability." *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (citations omitted). A claimant who also continues to seek work after his alleged onset date strengthens this inference. *See Milam v. Colvin*, 794 F.3d 978,984-985 (8th Cir. 2015) ("Milam's search for a new job after her layoff further evinces both a willingness and ability to work after she allegedly became disabled"). If a claimant continues to work despite her complaints of pain, that too will suggest that she is not disabled. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (claimant "worked for several years despite complaining of the pain she now claims is disabling, and concluded that it was the plant-closing, not her physical condition, that forced Browning out of work"). *See Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (claimant's activity level relevant "in assessing his level of pain and ability to perform gainful activity"). However, if an employee misses too many days of work, that would be a strong indicator of a claimant's disability. *See Milam*, 794 F.3d at 986 (vocational expert stated that missing two days per month consistently would qualify as "absenteeism 'on a consistent basis'" and would not be tolerated by an employer).

Plaintiff testified that she was missing work more frequently in the six months before her lay-off because she had to go to physical therapy, she received massages for her lymphedema, and she could not sit all the time because of her conditions. (Tr. 49-50). She also stated that her boss "more or less" told her that "you're missing too much time and I need you here in the office so you can support the engineers." (Tr. 51).

However, although plaintiff stated she missed some work in the six months before being laid off, she did not believe it was the basis for being laid off. (Tr. 49-51). Plaintiff admitted she was laid off because of "a cutback." (Tr. 49). She continued to work through her pain and continued to seek work after being laid off, admitting: "I put in at several companies throughout the years." (Tr. 51). While there might be evidence to support a contrary inference, if substantial evidence exists to support two inconsistent decisions, and one of those positions represents the Commissioner's decision, the court must affirm. *See Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996). The Court finds that the ALJ's conclusion that plaintiff stopped working for reasons other than her disability is supported by substantial evidence in the record, so it must affirm.

Third, plaintiff's cellulitis appeared to be effectively treated during the relevant time period. Plaintiff argues that, while her abscess may have been treated, her cellulitis continues to cause her pain and relates to her need to elevate her legs. (Doc. 19 at 6). However, the first medical report indicating that plaintiff must keep her legs elevated appeared in 2015, two years after plaintiff's date last insured. (Tr. 798). In his decision, the ALJ stated that the "cellulitis appears to be effectively treated with antibiotics." (Tr. 20). This is supported by the record during the relevant time period. In a medical report by Shahzad Hasan, M.D., dated December 27, 2012, four days before plaintiff's date last insured, Dr. Hasan states that plaintiff was admitted due to pain and swelling in her lower left extremity, but that plaintiff "reported that her leg seems to be improved since she was started on antibiotics with decreased pain and swelling. Also, the redness has improved." (Tr. 324). As such, the record supports the finding that plaintiff's cellulitis was brought under control during the relevant time period.

Fourth, medical records note that plaintiff's legs were without severe edema or loss of sensation during the relevant time period. The ALJ discussed a record pre-dating the alleged onset date but also referenced several other records during the relevant time period elsewhere in his analysis. (Tr. 18-19). In November 2010, October 2012, and December 2012, plaintiff received treatment for her lymphedema and reported that her pain and swelling decreased satisfactorily following the treatment. After treatment in

October and November 2010, a report noted "tenderness had resolved and the swelling had decreased satisfactorily" (Tr. 815). In November and December 2010, it was noted that after treatment, extreme edema was controlled with no swelling in right leg and minimal swelling in left, and both lower extremities had "good sensory motor function". (Tr. 896-902). On July 29, 2011, it was noted that her extremities revealed no edema, although the doctor noted plaintiff "does have bilateral lower extremity lymphedema." (Tr. 302). On October 28, 2012, "[l]eg swelling and pain improved" were reported. (Tr. 279). Reports of "moderate" edema were made in October 2012 (Tr. 290) and February 2013 (Tr. 294). And in December 2012, it was noted that after treatment, swelling, pain, and redness in her leg had improved and there was only "trace edema in the right lower extremity" and 1+ edema in the left lower extremity. (Tr. 324-25). During treatment on October 24 and December 28, 2012, plaintiff's lower extremity venous Doppler examinations revealed no evidence of deep vein thrombosis. (Tr. 320, 371, 376). Because these reports are substantial evidence in the record that support the ALJ's findings regarding plaintiff's symptoms, the Court must defer to the ALJ's decision.

Fifth, the ALJ noted that nothing in the medical evidence supported plaintiff's allegation that she is required to elevate her legs seventy percent of the time. After reviewing the record, the Court agrees. Nothing in the medical evidence from the relevant time period supports this allegation. The closest evidence is Dr. Hayes' opinion, which states that plaintiff's legs should be elevated 75percent of an 8-hour day, but this opinion was issued in 2016, over three years after plaintiff's date last insured. Similarly, while Dr. Reed's 2016 opinion does state that plaintiff must elevate her legs (Tr. 798-80), it also post-dates the relevant time period, indicates that plaintiff could sit for at least six hours in an eight-hour workday, and does not state at all what percentage of the workday plaintiff should elevate her legs. (Tr. 800). Records that are from the relevant time period only suggest that plaintiff keep her legs elevated when possible or use support stockings. (Tr. 325, 469, 515, 615). The only other evidence supporting the claim that plaintiff must elevate her legs 70 percent of the day is plaintiff's own testimony. Plaintiff testified at the time of the hearing in February 2016, over three years after the date last

insured, that she has her feet elevated 70 percent of daylight hours (Tr. 56). But she also stated that "as the years have come through the lymphedema has gotten worse." (Tr. 55). Accordingly, there is no medical evidence in the record indicating that during the relevant time period plaintiff's symptoms were so severe that she needed to elevate her legs 70 percent of the day.

Sixth, the ALJ found plaintiff's previous job requirements consistent with her limitations. Plaintiff claimed that as a global systems network manager she was required to walk and stand one and a half hours a day and sit six and a half hours per day. She was required to lift and carry less than ten pounds, typically notebooks and binders to meetings. She was required to grasp and handle small objects and write about seven and a half hours a day. She was not required to stoop, bend, crouch, grasp, handle, or grab large objects. (Tr. 191). This was consistent with the RFC formulated by the ALJ. "The claimant carries the burden of establishing that [she] is unable to perform [her] past relevant work." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The only evidence suggesting plaintiff was unable to perform her past work during the relevant time period is plaintiff's own testimony. Plaintiff has not pointed to any evidence during the relevant time period supporting the severity of plaintiff's subjective complaints for a period of twelve consecutive months. Considering the record as a whole, but with particular emphasis on the medical records between October 2010 and December 2012 discussed above, substantial evidence supports the ALJ's conclusion that plaintiff's report of her job requirements was consistent with her abilities during the time period at issue. (Tr. 20).

For all of these reasons, the ALJ did not err in evaluating plaintiff's testimony regarding her symptoms.

### C. **The ALJ made consistent findings regarding obesity**

Plaintiff also alleges that because the ALJ found that obesity was a severe impairment, and that a severe impairment affects one's ability to do most jobs, the ALJ improperly found plaintiff's obesity did not result in "severe symptoms and limitations of

function." (Tr. 21). However, "the Social Security Administration has never stated that morbid obesity automatically prevents a person from working, especially when the work is sedentary." *Crawford v. Colvin*, 809 F.3d 404, 411 (8th Cir. 2015) (citations omitted). According to plaintiff's own testimony, her work is sedentary. (Tr. 190-97). The ALJ stated that the medical reports do not support plaintiff's contention that she would not be able to return to work with the disabilities she had before her date last insured. (Tr. 21); (Tr. 278-80, 291, 302, 324, 342, 351, 366-67). The ALJ found plaintiff's obesity to be severe but not equivalent to any listing. (Tr. 21). He found that plaintiff can effectively ambulate and could not find any persuasive evidence that plaintiff's obesity results in severe symptoms and functional limitations. (Tr. 21). Plaintiff has not pointed to any statement on the record that contradicts the ALJ's finding that, between the alleged onset date and plaintiff's date last insured, she was not able to perform her past work as a global systems network manager.

The ALJ's finding regarding plaintiff's obesity is supported by the record.

**D.     The ALJ properly weighed the evidence**

Plaintiff again argues that the ALJ is required to resolve conflicts among the opinions of various treating and examining physicians, but did not do so with Dr. Reed's and Dr. Hayes' opinions. For the reasons discussed above with respect to these opinions, this argument fails. An ALJ "need not consider medical records created after the date last insured unless they relate to [the claimant's] condition before the date last insured." *Bannister v. Astrue*, 730 F. Supp. 2d 946, 953 (S.D. Iowa 2010); *see also Whitman v. Colvin*, 762 F.3d 701, 709 (8th Cir. 2014). Dr. Hayes started seeing plaintiff in 2015, and her opinion was issued in January 2016, over three years after plaintiff's date last insured. Dr. Reed's opinion was also issued in January 2016, three years after plaintiff's date last insured. Neither of these opinions applied to plaintiff's condition three years earlier. (Tr. 42-43, 168, 209, 801-02). The ALJ was not required to consider these opinions, because they came after the date plaintiff was last insured by over three years, and because there

was no indication whatsoever that they applied to plaintiff's condition during the relevant period. The ALJ did not err in his treatment of these opinions.

### III. CONCLUSION

For the reasons set forth in this opinion, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 20, 2018.